UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>v.<br><br>AMAURY VILLA. | Criminal No. 3:12cr40 (JBA)<br><br>January 22, 2014 |

**RULING DENYING DEFENDANT'S SECOND
MOTION TO DISMISS THE INDICTMENT**

Defendant Amaury Villa moves [Doc. # 94] to dismiss the Superseding Indictment [Doc. # 86] charging him with conspiracy, in violation of 18 U.S.C. § 371; four substantive counts of theft from a cargo shipment, in violation of 18 U.S.C. § 659; and one count of interstate transportation of stolen property, in violation of 18 U.S.C. § 2314, arising out of the burglary of an Eli Lilly distribution facility in Enfield, Connecticut (the "Connecticut Indictment") on grounds of double jeopardy and multiplicity. For the reasons that follow, Defendant's motion is denied.

**I.     Facts**

   **A.     Connecticut Indictment**

On March 12, 2012, the Connecticut Indictment [Doc. # 5] was returned, alleging that from January 7, 2010 to March 19, 2010, Defendant and four other individuals formed and carried out a conspiracy to steal pharmaceuticals from an Eli Lilly distribution facility in Enfield, Connecticut. In November 2013, a Superseding Indictment [Doc. # 86] was returned, adding a substantive count of interstate

transportation of stolen property across state lines, and the conspiracy count was modified to reflect the object of transporting the stolen property across state lines.

According to the Government's proffer of facts, Defendant, his brother Amed Villa, and three uncharged and unnamed coconspirators referred to as C, D, and E—agreed to and did steal pharmaceuticals from the Enfield warehouse and transported them back to Florida. (Gov.'t's Mem. Opp'n [Doc. # 111] at 2.) In furtherance of this conspiracy, each of the defendants is alleged to have participated in one or more overt acts, including "casing" the warehouse, obtaining the required tools, arranging for a tractor trailer truck and driver to transport the stolen goods from Connecticut to Florida, traveling to Connecticut to commit the theft, breaking into the Connecticut warehouse, stealing the property, loading it into a tractor trailer and then transporting it via tractor trailer from Connecticut to Florida. (*Id.* at 10; *see also* Superseding Indictment ¶¶ 13a–x.)

Each of the conspirators understood that coconspirator "C" had a prearranged buyer who would purchase their stolen goods in Florida. Upon returning to Florida, this buyer "ostensibly backed out," at which point the Government contends the conspiracy "fell apart," because the "the initial agreement concerning anticipated disposition of the stolen property was not accomplished" and the goods "had become too hot to move right away." (Gov.'t's Mem. Opp'n at 10.)

B.     **Miami Indictment**

On April 5, 2012, an eighteen-count indictment was returned in the Southern District of Florida, charging eleven defendants with participating in multiple separate agreements to sell pharmaceuticals stolen from various manufacturers in Pennsylvania, Ohio, Tennessee, Virginia, and the Enfield, Connecticut Eli Lilly warehouse, and

2

inflatable boats stolen from a terminal in South Carolina. *See United States v. Amaury Vill et al.*, No. 12cr20234 (WPD), Indictment [Doc. # 3] (S.D. Fla. Apr. 6, 2012) (the "Miami Indictment"). Each set of stolen products was charged as a separate conspiracy in the Miami Indictment, and some of the defendants were charged with participating in multiple conspiracies, but none of them participated in every conspiracy. Defendant Villa was the only overlapping Defendant between the Connecticut and Miami Indictments.

Defendant was only charged with participating in one conspiracy in the Miami Indictment, which spanned from June 13, 2011 through October 14, 2011—to sell the Enfield Eli Lilly pharmaceuticals. Defendant provided 2466 bottles of Zyprexa and 1104 bottles of Cymbalta stolen from Enfield to Suhong Wu, who acted as a middleman and in turn provided them to Garcia-Amador, who sold them to a Government informant posing as a final buyer.[1] Defendant was charged with conspiracy, in violation of 18 U.S.C. § 371; four substantive counts of sale of stolen property, in violation of 18 U.S.C. § 2315; and one substantive count of possession, concealment, and storage of stolen property, in violation of 18 U.S.C. § 2315.

On September 7, 2012, Defendant pled guilty to Count 13 of the Miami Indictment, conspiracy to sell stolen goods in violation of 18 U.S.C. § 371, and Count 18, charging possession, concealment, and storage of stolen property in violation of 18 U.S.C. § 2315. Counts 14 through 17 for sale of stolen property in violation of 18 U.S.C. § 2315 were dismissed. Defendant was sentenced to 60 months' imprisonment on the

---

[1] Defendant Garcia-Amador was alleged to be one of the two primary "fences" who found buyers for the assorted stolen products described in the Miami Indictment.

conspiracy charge and 80 months' imprisonment on the possession of stolen goods charge, to run consecutively.

II.     Discussion

    A.      Successive Conspiracy Prosecutions[2]

Defendant contends that his guilty plea to the conspiracy count of the Miami Indictment precludes his continued prosecution in Connecticut, because he agreed to just a single conspiracy "to steal, (necessarily possess), sell and/or distribute the stolen Eli Lilly pharmaceuticals that were taken from Enfield, Connecticut on March 14, 2010." (Def.'s Mem. Supp. [Doc. # 94] at 27.)

The protection against double jeopardy is enshrined in the Fifth Amendment of the United States Constitution, which provides that never "shall any person be subject for the same offense to be twice put in jeopardy of life or limb." U.S. Const., amend. V. "Under this Clause, once a defendant is placed in jeopardy for an offense, and jeopardy terminates with respect to that offense, the defendant may neither be tried nor punished a second time for the same offense." *Sattazahn v. Pa.,* 537 U.S. 101 (2003).

"The Double Jeopardy Clause confers its protections in three different situations—where there is a second prosecution for the same offense after acquittal of that offense; where there is a second prosecution for the same offense after conviction of the

---

[2] Although the Connecticut Indictment was returned before the Miami Indictment, Defendant's conviction in Miami is final while the prosecution here is ongoing. It is the order of conviction, not indictment, that controls the double jeopardy analysis, and thus the Connecticut prosecution is "successive" even though it was initiated before the Miami case. *See Brown v. Ohio*, 432 U.S. 161, 169 (1977) ("Whatever the sequence may be, the Fifth Amendment forbids successive prosecution.").

offense; and where there are multiple punishments for the same offense." *United States v. Estrada*, 320 F.3d 173, 180 (2d Cir. 2003) ("*Estrada II*") (citing *Schiro v. Farley,* 510 U.S. 222, 229 (1994)). "The purposes served by the constitutional prohibition against double jeopardy include protection against the hazards of trial and possible conviction more than once for the same offense; preservation of the finality of judgments; and deprivation of an opportunity for the prosecution to supply evidence at a successive trial that it failed to present the first time around." *Id.* (citing *United States v. DiFrancesco,* 449 U.S. 117, 127–29 (1980)).

To prevail on a double jeopardy claim, a defendant must demonstrate that the charged offenses are the same in fact and in law. *Id.* In the context of successive conspiracy prosecutions, the relevant inquiry is "whether the second prosecution is for a conspiracy distinct from that previously prosecuted. If the second prosecution is for a distinct conspiracy, there is no double jeopardy problem regardless of an overt act or other evidentiary overlap." *Id.* (quoting *United States v. Gambino,* 968 F.2d 227, 231 (2d Cir. 1992)).

To make this determination, the Second Circuit analyzes the factors set forth in *United States v. Korfant,* 771 F.2d 660, 662 (2d Cir. 1985):

> (1) the criminal offenses charged in successive indictments; (2) the overlap of participants; (3) the overlap of time; (4) similarity of operation; (5) the existence of common overt acts; (6) the geographic scope of the alleged conspiracies or location where overt acts occurred; (7) common objectives; and (8) the degree of interdependence between alleged distinct conspiracies.

Courts must "'consider the several *Korfant* factors with the lively awareness that no dominant factor or single touchstone determines whether' the compared conspiracies are

5

in law and fact the same." *Estrada*, 320 F.3d at 181 (quoting *United States v. Macchia,* 35 F.3d 662, 668 (2d Cir. 1994)). "If a defendant makes a non-frivolous showing on a double jeopardy claim that the two conspiracies under review are not distinct, the burden shifts to the Government to prove by a preponderance of evidence that the conspiracies are separate." *Id.*

In *Estrada*, for example, the Second Circuit rejected a double jeopardy challenge where the defendant, Hector Gonzalez, was charged with two partially overlapping drug conspiracies. First, in June 1997, Gonzalez was arrested in New York after attempting to purchase ten kilograms of cocaine, and indicted for conspiracy to possess with intent to distribute cocaine and attempting to possess with intent to distribute cocaine. *Id.* at 176. In November 1997, Gonzalez pled guilty to the conspiracy charge in New York.

In August 1999, the FBI in Connecticut launched a separate investigation into the narcotics trafficking activities of Frank Estrada, the leader of a large organization that processed, packaged, and delivered crack and heroin in various locations throughout Connecticut. *Id.* at 178. In late 2000, Estrada and twenty-three of his associates were indicted. Gonzalez was not indicted until June 2001 after a Connecticut state inmate, Jose Lugo, voluntarily wrote a letter to the Assistant United States Attorney handling the case indicating that he had relevant information regarding the Estrada organization. *See United States v. Estrada*, 188 F. Supp. 2d 207, 214 (D. Conn. 2002) ("*Estrada I*"). At the trial of Gonzalez's coconspirators, Lugo described the circumstances of Gonzalez's 1997 New York arrest, and testified that Estrada had provided Gonzalez with a bag of cash to travel to New York to replenish the Estrada organization's supply of narcotics. *Estrada II*, 320 F.3d at 179.

While Lugo's testimony regarding Gonzalez's New York arrest demonstrated that "the two conspiracies do overlap somewhat with respect to time frame and criminal objective," applying the *Korfant* factors the Second Circuit concluded that the fact that Gonzalez "was purchasing cocaine in New York, apparently for conversion to cocaine base for sale by the Estrada organization in Connecticut during the course of the long-term conspiracy afoot in Connecticut, is insufficient to establish the requisite commonality." *Id.* at 182.

Applying the *Korfant* factors to the case at bar, the Court likewise concludes that although both the Connecticut and Miami Indictments involve the same goods stolen in Enfield, the Government has not impermissibly charged Defendant twice for the same conspiracy. The first factor considered is the offenses charged in each indictment. Both the Connecticut and Miami Indictments charge violations of the general conspiracy statute, 18 U.S.C. § 371. "Similarity at this general level, however, is of limited import," *Macchia*, 35 F.3d at 669, and the aims of the charged conspiracies differ: the Connecticut Indictment alleges conspiracy to commit theft from an interstate shipment and to transport stolen property across state lines, while the Miami Indictment charges conspiracy to sell stolen property.

The two conspiracies do not overlap in overt acts, timeframe, or—aside from Defendant—participants, and there is little geographical overlap. The Miami Indictment occurred entirely within Miami-Dade County, while the Connecticut Indictment centered around the burglary in Enfield with some overt acts occurring in multiple locations throughout New York, New Jersey, Connecticut, and Florida. Further, there are substantial differences between the operations and objectives of both conspiracies. In

7

Connecticut, Defendant and four other individuals are alleged to have agreed to steal pharmaceuticals from the Enfield warehouse and to transport them back to Florida. Although each of the coconspirators understood that the ultimate objective of the conspiracy was to sell these stolen goods in Florida, this aspect of the plan was never realized. It was only fifteen months after the Enfield burglary that Defendant entered into a separate agreement with different participants to dispose of this property to a different buyer using a new distribution network centered around Garcia-Amador.

In order to accomplish the objectives of the Connecticut conspiracy, the coconspirators shared responsibilities, including making a reconnaissance trip to the warehouse, obtaining the necessary tools, breaking into the warehouse and disabling the alarms, loading the products onto a tractor trailer while one coconspirator served as a lookout, and transporting the goods to Florida. In contrast, the Miami conspiracy involved a simpler plan for Defendant to sell the stolen goods via Wu and Garcia-Amador, with each taking a commission.

As the Government acknowledges, broadly viewed the objective of both conspiracies was to sell in Florida the pharmaceuticals stolen from the Enfield warehouse. (*See* Gov.'t's Opp'n at 15.) The Connecticut conspiracy, however, was broader and involved a plan to first burglarize the warehouse and transport the goods to Florida. The inability of the Connecticut coconspirators to sell the goods in Florida as originally planned, made it possible for Defendant to form a separate agreement fifteen months later to dispose of these same goods in a different manner with different confederates. Given that there was no overlap between the parties to the two conspiracies beyond Defendant, the Government's proffer of evidence contains no indication that any of

8

Defendant's conspirators in Connecticut shared the same objective as the Miami coconspirators to dispose of the goods in the particular manner described in the Miami Indictment.

Likewise in *Estrada*, although the defendant traveled to New York to secure a wholesale quantity of cocaine to further a separate conspiracy in Connecticut, none of the New York coconspirators were a party to the agreement "to purchase, prepare, package or distribute narcotics" in Connecticut. 320 F.3d at 184. Accordingly, the Second Circuit explained, the "agreements of the New York co-conspirators were different from the agreements of the Connecticut co-conspirators, and 'multiple agreements to commit separate crimes constitute multiple conspiracies.'" *Id.* at 184 (quoting *United States v. Broce,* 488 U.S. 563, 571 (1989)).

The final factor—the degree of interdependence between the two conspiracies— "requires us to consider the extent to which the success or failure of one conspiracy is independent of a corresponding success or failure by the other." *Macchia,* 35 F.3d at 671. The Connecticut conspiracy did not depend on the success or the failure of the Miami conspiracy, because as it was originally contemplated, the stolen goods were going to be sold by different coconspirators than those involved in the Miami Indictment pursuant to a different plan. The Connecticut conspiracy ended without any agreement regarding the sale of goods, which thus made it possible for Defendant to enter into a separate agreement fifteen months later to dispose of these goods with the Miami coconspirators. Although the Connecticut conspiracy was a necessary precondition to the formation of the Miami conspiracy, at the time the Miami conspiracy operated, it was not dependent

9

on any additional success by the Connecticut coconspirators, who had long since disbanded.

Viewing the totality of the circumstances and factors, the Government has met its burden of demonstrating the existence of two separate conspiracies.

**B.     Multiplicity**

In addition to alleging that he has been impermissibly charged with the same conspiracy in both the Miami and Connecticut Indictments, Defendant argues that the substantive charges in both indictments are multiplicitous. (*See* Def.'s Mem. Supp. at 35.)

"An indictment is multiplicitous when it charges a single offense as an offense multiple times, in separate counts, when, in law and fact, only one crime has been committed." *United States v. Chacko*, 169 F.3d 140, 145 (2d Cir. 1999). Although a multiplicitous indictment is constitutionally barred by the Double Jeopardy Clause, whether or not an indictment is multiplicitous is a matter of statutory interpretation. *See Brown*, 432 U.S. at 165 ("The legislature remains free under the Double Jeopardy Clause to define crimes and fix punishments; but once the legislature has acted courts may not impose more than one punishment for the same offense and prosecutors ordinarily may not attempt to secure that punishment in more than one trial."). "[T]he touchstone is whether Congress intended to authorize separate punishments for the offensive conduct under separate statutes. It is not determinative whether the same conduct underlies the counts; rather, it is critical whether the 'offense'—in the legal sense, as defined by Congress—complained of in one count is the same as that charged in another." *Chacko*, 169 F.3d at 146.

To make this determination the *Blockburger v. United States,* 284 U.S. 299 (1932) test is applied.[3] The *Blockburger* test examines whether each charged offense contains an element not contained in the other charged offense. If there is an element in each offense that is not contained in the other, they are not the same offense for purposes of double jeopardy, and they can both be prosecuted. *See United States v. Dixon,* 509 U.S. 688, 696 (1993).

In the Connecticut Indictment, Defendant is charged with four substantive counts of theft from a cargo shipment, in violation of 18 U.S.C. § 659, and one count of interstate transportation of stolen property, in violation of 18 U.S.C. § 2314. Defendant pled guilty to Count 18 of the Miami Indictment, charging possession, concealment, and storage of stolen property, in violation of 18 U.S.C. § 2315, and the four substantive counts of sale of stolen property, in violation of 18 U.S.C. § 2315, were dismissed. Of these charges, Defendant asserts only that his conviction for possession of stolen property under § 2315 in Miami precludes his successive prosecution in Connecticut for theft of that same property under § 659. (Def.'s Mem. Supp. at 37.)

---

[3] Normally, a multiplicity issue arises when a single indictment charges multiple times what is legally and factually only a single offense. In such cases, the defendant would be subject to multiple punishments for the same offense, implicating the third category of double jeopardy. *See Estrada*, 320 F.3d at 180. Here, however, Defendant alleges multiplicity between the Connecticut Indictment and his criminal conviction pursuant to the Miami Indictment. Accordingly, this case involves the second category of double jeopardy, a second prosecution for the same offense after conviction of the offense. *Id.* The analysis under the *Blockburger* test is the same in both instances. *See Brown*, 432 U.S. at 166 ("If two offenses are the same under [the *Blockburger*] test for purposes of barring consecutive sentences at a single trial, they necessarily will be the same for purposes of barring successive prosecutions.").

Under the *Blockburger* test, if § 659 charged in Connecticut and § 2315 charged in Miami each contain an element not contained in the other, there is no double jeopardy obstacle to prosecution on both counts.

The elements of 18 U.S.C. § 659, theft from an interstate shipment are: (1) that the defendant unlawfully took (or aided and abetted the taking of) property, (2) that at the time of the theft the property was part of an interstate shipment, (3) that the defendant did so willfully and with the intent to convert the goods or property to his own use, and (4) that the value of the stolen property had a total value in excess of $1,000. *See* Modern Federal Jury Instructions, 25-2.

The elements of 18 U.S.C. § 2315, possession, concealment, and storage of stolen property, are: (1) that the goods were stolen, converted, or taken; (2) that after the property was stolen, converted, or taken, it crossed an interstate boundary; (3) that the defendant received, possessed, concealed, stored, bartered, sold, or disposed of the property; (4) that the defendant knew the property had been stolen, converted, or unlawfully taken; and (5) that the value of the property was at least $5,000. *See* Modern Federal Jury Instructions, 54-47.

Applying the *Blockburger* test, § 659 charged in Connecticut and § 2315 charged in Miami each contain an element not contained in the other. A violation of § 659 requires that the defendant unlawfully took property from an interstate shipment, while § 2315 does not. Likewise § 2315 requires that the property cross a state line after it was stolen and before the defendant possessed it, an element not required by § 659.[4]

Citing *United States. v. Gaddis*, 424 U.S. 544, 547 (1976), in which the Supreme Court applied its ruling in *Heflin v. United States*, 358 U.S. 415, 419 (1959), which held that a person cannot be convicted under two subdivisions of the same statute, 18 U.S.C. § 2113, for both robbing a bank and receiving or possessing the proceeds of that same robbery, Defendant contends he cannot be charged with theft from an interstate shipment in violation of § 659 in the Connecticut Indictment given his guilty plea to the Miami Indictment for possession, concealment, and storage of this same stolen property, in violation of 18 U.S.C. § 2315. (*See* Def.'s Mem. Supp. at 37.)

In *United States v. DiGeronimo*, 598 F.2d 746, 750 (2d Cir. 1979), applying *Heflin* and *Gaddis* the Second Circuit held that a defendant could not be charged with both Hobbs Act robbery, 18 U.S.C. § 1951, and receiving and possessing those same stolen goods under § 659. As the Government correctly notes, however, *Heflin*, *Gaddis*, and *DiGeronimo* involved statutory construction of offenses not charged here, and did not

---

[4] Although Defendant does not appear to assert multiplicity within the Connecticut Indictment between his charge for theft of an interstate shipment under § 659 and interstate transportation of stolen property under § 2314, both of these offenses are distinct from each other under the *Blockburger* test as well. Section 2314 requires that the defendant transport stolen property across state lines, which § 659 does not. Section 659 requires that the defendant unlawfully took property from an interstate shipment, which § 2314 does not.

state as a general matter that theft and possession of stolen goods could not be both charged. Rather, the focus was whether Congress intended for a defendant to be subject to being charged with both offenses under the particular statutes at issue. *See DiGeronimo*, 598 F.2d at 750 ("Did Congress intend to pyramid the punishment of those persons who commit robbery in interstate commerce and then receive or possess the stolen goods or was the latter prohibition designed to 'reach a new group of wrongdoers'?").

The Supreme Court has since reaffirmed that the *Blockburger* test is the "rule of statutory construction" that should apply absent a "clear indication of contrary legislative intent" or where "the legislative history is silent." *Albernaz v. United States*, 450 U.S. 333, 340–42 (1981) ("[I]f anything is to be assumed from the congressional silence on this point, it is that Congress was aware of the *Blockburger* rule and legislated with it in mind."). There is no clear indication of congressional intent that a violation of § 659 cannot be charged along with a violation of § 2315. *See, e.g., United States v. Reed*, 647 F.2d 678, 683 (6th Cir. 1981) ("There is scant legislative history on 18 U.S.C. § 2315."). Unlike in *Heflin* and *Gaddis*, which involved different subdivisions of the same statute, here Defendant is charged with violation of two statutes that cover distinct criminal acts.[5] *Cf. Heflin*, 358 U.S. at 419–20 ("We find no purpose of Congress to pyramid penalties for lesser offenses following the robbery. It may be true that in logic those who divide up the

---

[5] In *DiGeronimo*, the Second Circuit noted that unlike in *Heflin* and *Gaddis*, the defendant had been charged under two separate statutes, but given that § 659 itself has provisions which both criminalize robbery and possession of stolen goods, the Second Circuit viewed "the Hobbs Act count . . . as a functional substitute for a charge under the theft provisions of section 659." 598 F.2d at 750.

14

loot following a robbery receive from robbers and thus multiply the offense. But in view of the legislative history of subsection (c) we think Congress was trying to reach a new group of wrongdoers, not to multiply the offense of the bank robbers themselves."). Defendant's charge under § 659 addresses the alleged theft from the Enfield warehouse, while the § 2315 charge of the Miami Indictment addresses Defendant's subsequent transportation of this property across state lines and storage and concealment of this loot for over a year. As discussed above, under the *Blockburger* test, prosecutions for both of these distinct offenses is permissible.

Defendant also contends that Counts II through IV of the Connecticut Indictment, charging theft from an interstate shipment under § 659 are "subsumed" by Count I, charging conspiracy to commit theft from an interstate shipment. (Def.'s Mem. Supp. at 37.) This contention fails, however, because it "has been long and consistently recognized by the [Supreme] Court that the commission of the substantive offense and a conspiracy to commit it are separate and distinct offenses." *Callanan v. United States*, 364 U.S. 587, 593 (1961) (quoting *Pinkerton v. United States*, 328 U.S. 640, 643 (1946)).

Finally, Defendant contends that Counts II through IV should be consolidated into a single offense, because the Government's "own discovery evidence" does not support the allegation that four separate shipments destined for different parts of the United States were stolen, and that these stolen goods were not in fact part of any shipment. (Def.'s Mem. Supp. at 39.) Defendant does not appear to contest—nor can he—that a defendant can be charged with one count of § 659 for each distinct interstate shipment that is stolen. *See Oddo v. United States*, 171 F.2d 854, 856 (2d Cir. 1949) ("[W]e think that under [§ 659] the taking of cases of merchandise belonging to different

owners and constituting independent interstate shipments, though contained in one vehicle, may be regarded as separate offenses for which separate punishment can be imposed."); *see also Ward v. United States*, 694 F.2d 654, 659 (11th Cir. 1983) ("Thus, each tractor received by Ward which was ultimately bound for a different destination would constitute one shipment and one allowable unit of prosecution, regardless of whether all tractors were at one time traveling together in interstate commerce.").

Instead, Defendant appears to advance the same argument that he posited and this Court rejected in his first motion to dismiss the Connecticut Indictment: that there is insufficient evidence to prove the required element of § 659 that the stolen goods were part of distinct interstate shipments. As the Court explained in its oral ruling [Doc. # 88] denying Defendant's first motion on these grounds, "the sufficiency of the evidence is not appropriately addressed on a pretrial motion to dismiss an indictment," *see United States v. Alfonso*, 143 F.3d 772, 776–77 (2d Cir. 1998), and the Government will be required to prove these elements at trial, but not beforehand.

### III.    Conclusions

As set forth above, Defendant's Second Motion [Doc. # 94] to Dismiss the Indictment is DENIED.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 22nd day of January, 2014.