UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    *v.*<br><br>AMAURY VILLA. | Criminal No. 3:12cr40 (JBA)<br><br>January 24, 2014 |

**RULING ON DEFENDANT'S MOTIONS TO COMPEL**

Defendant Amaury Villa has filed four motions [Doc. # 95, 101, 115, 124] seeking to compel the production of *Brady* material and other evidence from the Government in this case.[1]

The facts of this case are set forth in detail in the Court's recent Ruling Denying Defendant's Second Motion to Dismiss the Indictment [Doc. # 129]. Briefly, Defendant is charged with conspiracy, in violation of 18 U.S.C. § 371; four substantive counts of theft from a cargo shipment, in violation of 18 U.S.C. § 659; and one count of interstate transportation of stolen property, in violation of 18 U.S.C. § 2314, arising out of the burglary of an Eli Lilly distribution facility in Enfield, Connecticut. Defendant was separately charged and pled guilty in the Southern District of Florida to entering into a

---

[1] The Government represents that it is working to clarify the scope of Defendant's Third [Doc. # 101] Motion to Compel, and will provide the requested materials once it receives such clarification. Based on this representation, the motion [Doc. # 101] is DENIED as moot. Defendant's "Motion for an Order" [Doc. # 115] does not set forth any new material sought and instead seeks an order compelling the disclosure of "the remaining *Brady* evidence as identified and requested in Mr. Villa's Second Motion to Compel." (Mot. for an Order ¶ 5.). Given that this motion [Doc. # 115] is duplicative of the Second Motion to Compel, it is DENIED as moot.

separate conspiracy to sell the stolen Enfield pharmaceuticals over fifteen months after the initial burglary.[2]

I. Discussion

   A. *Brady* and Discovery Obligations

The Government's disclosure requirements are governed by both statutory and constitutional dimensions. Pursuant to *Brady v. Maryland,* 373 U.S. 83 (1963) and its progeny, the Government's obligations "are seemingly well-established." *United States v. Coppa*, 267 F.3d 132, 135 (2d Cir. 2001). The "prosecution has a constitutional duty to disclose evidence favorable to an accused when such evidence is material to guilt or punishment." *Id. Giglio v. United States,* 405 U.S. 150, 154 (1972) established that "[t]his duty covers not only exculpatory material, but also information that could be used to impeach a key government witness." *Coppa*, 267 F.3d at 135. "*Brady* does not, however, require the prosecution to disclose *all* exculpatory and impeachment material." *Id.* Generally, the Government has a constitutional duty to disclose only evidence that is "material" either to guilt or to punishment. *Id.* at 139.

In *Brady*, the Supreme Court "appear[ed] to be using the word 'material' in its evidentiary sense, *i.e.,* evidence that has some probative tendency to preclude a finding of

---

[2] In Miami, Defendant was charged with conspiracy, in violation of 18 U.S.C. § 371; four substantive counts of sale of stolen property, in violation of 18 U.S.C. § 2315; and one substantive count of possession, concealment, and storage of stolen property, in violation of 18 U.S.C. § 2315. Defendant pled guilty to conspiracy and possession, concealment, and storage of stolen property. The four substantive counts of sale of stolen property were dismissed. Defendant was sentenced to 60 months' imprisonment on the conspiracy charge and 80 months' imprisonment on the possession of stolen goods charge, with the sentences to run consecutively.

guilt or lessen punishment." *Id.* at 141. In subsequent decisions, the Supreme Court has rejected this interpretation and held that "evidence is material in the *Brady* context only if 'its suppression undermines confidence in the outcome of the trial.'" *Id.* (quoting *United States v. Bagley*, 473 U.S. 667, 678 (1985)).

The difficulty in making this determination pre-trial is that *Brady* material is "ultimately defined retrospectively, by reference to the likely effect that the suppression of particular evidence had on the outcome of the trial." *Id.* at 140. Before trial, the defendant and the trial court will often not know the extent of the prosecution's evidence or theory of the case, and thus will not always be in a position to evaluate whether a particular piece of evidence constitutes *Brady* material. Hence, the prosecutor has a special obligation and responsibility to determine what evidence is covered by *Brady*. *See Kyles v. Whitley*, 514 U.S. 419, 437 (1995) ("[T]he prosecution, which alone can know what is undisclosed, must be assigned the consequent responsibility to gauge the likely net effect of all such evidence and make disclosure when the point of 'reasonable probability' is reached.").

Some courts have noted that this retrospective definition of *Brady* material "is only appropriate . . . in the context of appellate review." *United States v. Sudikoff*, 36 F. Supp. 2d 1196, 1198 (C.D. Cal. 1999); *see also* Ellen Yaroshefsky, *Prosecutorial Disclosure Obligations*, 62 HASTINGS L.J. 1321, 1335 n.70 (2011) (collecting cases). Aside from the inherent difficulty of measuring materiality to a trial that has not yet occurred, the analysis post-trial focuses on a different question—"whether the improper suppression of evidence violated the defendant's due process rights" rather than whether the material ought to have been disclosed in the first place. *Sudikoff*, 36 F. Supp. 2d at 1198 ("[T]hat

3

the suppression may not have been sufficient to violate due process does not mean that it was proper."). While it is not clear if this theory has been accepted in this Circuit, *see United States v. Stein*, 424 F. Supp. 2d 720, 726 (S.D.N.Y. 2006), in discussing the materiality standard in *Coppa*, the Second Circuit noted that that it had "no occasion to consider the scope of a trial judge's discretion to order pretrial disclosures as a matter of sound case management," *Coppa*, 267 F.3d at 146.

As relevant to this motion, Federal Rule of Criminal Procedure 16(a)(1)(E) provides:

> Upon a defendant's request, the government must permit the defendant to inspect and to copy or photograph books, papers, documents, data, photographs, tangible objects, buildings or places, or copies or portions of any of these items, if the item is within the government's possession, custody, or control and:
>
> **(i)** the item is material to preparing the defense;
> **(ii)** the government intends to use the item in its case-in-chief at trial; or
> **(iii)** the item was obtained from or belongs to the defendant.

"Materiality means more than that the evidence in question bears some abstract logical relationship to the issues in the case. There must be some indication that the pretrial disclosure of the disputed evidence would have enabled the defendant significantly to alter the quantum of proof in his favor." *United States v. Maniktala*, 934 F.2d 25, 28 (2d Cir. 1991) (quoting *United States v. Ross,* 511 F.2d 757, 762–63 (5th Cir. 1975)).

The Jencks Act, 18 U.S.C. § 3500, and not Rule 16, governs prior statements made by testifying government witnesses. By its terms, Rule 16 does not "authorize the discovery or inspection of statements made by prospective government witnesses except

4

as provided in 18 U.S.C. § 3500." Fed. R. Crim. P. 16(a)(2). Section 3500 "is the exclusive vehicle for disclosure of statements made by government witnesses." *United States v. Percevault,* 490 F.2d 126, 128–29 (2d Cir. 1974) (citation omitted). Unlike Rule 16, which provides for pre-trial disclosure of the materials covered, § 3500 requires disclosure only "after the witness has testified at trial." *Id.* at 129.

B.     **The Government's Disclosure Obligations in This Case**

In response to Defendant's motion, the Government responded that it "is unaware, at the present time, of any material in its possession that is exculpatory or otherwise favorable to the defense that has not already been turned over," but states that it "continues to review evidence and will make all such material available to the defense if and when any such evidence comes to light." (Gov.'t's Opp'n [Doc. # 127] at 1.)

There are two problems with this response. First, although there is no specific time when *Brady* evidence must be disclosed, it must "must be disclosed in time for its effective use at trial, or at a plea proceeding."[3] *Coppa*, 267 F.3d at 135 (internal citation omitted). As the Court has made clear, with jury selection set to commence on February 4, 2014, the time for disclosure is now. (*See* Endorsement Order [Doc. # 130] (ordering the disclosure of *Brady* material by January 24, 2014) ¶ 4.)

---

[3] If the statement of a witness who the Government intends to call at trial constitutes *Brady* evidence, its disclosure may be required well before the witness testifies at trial in order to allow the defense to make "effective use" of any exculpatory material. *See United States v. Rittweger*, 524 F.3d 171, 181 n.4 (2d Cir. 2008) ("Complying with the Jencks Act, of course, does not shield the government from its independent obligation to timely produce exculpatory material under *Brady*—a constitutional requirement that trumps the statutory power of 18 U.S.C. § 3500.").

Second, it is not clear what the Government means when it refers to being "unaware" of *Brady* material or evidence that is in its "possession," but depending on the intended meaning, *Brady* requires more. Whether or not an individual prosecutor is aware of *Brady* evidence is not pertinent, as the Government is charged with knowledge of all material gathered in connection its investigation. *See United States v. Payne*, 63 F.3d 1200, 1208 (2d Cir. 1995) ("The individual prosecutor is presumed to have knowledge of all information gathered in connection with the government's investigation."). Further, the Government's *Brady* obligations impose a duty to disclose not just that material known to an individual prosecutor, but "mean[] that the individual prosecutor has a duty to learn of any favorable evidence known to the others acting on the government's behalf in the case, including the police." *Kyles v. Whitley*, 514 U.S. 419, 437 (1995).

Given that Defendant seeks materials that may be in the possession of other government agencies outside of this District, it is also necessary to define what constitutes "the government" for Rule 16 and *Brady* purposes. Although there is no consensus, "it most definitely does not encompass the entirety of the federal government," but "it surely includes at least the prosecutors working on the case." *United States v. Ghailani*, 687 F. Supp. 2d 365, 370 (S.D.N.Y. 2010). Courts in this Circuit have generally held that where the U.S. Attorney's Office is engaged in a joint investigation with another federal or state, agency, materials in the possession of that other agency must be disclosed pursuant to Rule 16 and *Brady. See United States v. Gupta*, 848 F. Supp. 2d 491, 493 (S.D.N.Y. 2012) (citing cases) ("Where the USAO conducts a 'joint investigation' with another state or federal agency, courts in this Circuit have held that the prosecutor's duty extends to

6

reviewing the materials in the possession of that other agency for *Brady* evidence."); *United States v. Finnerty*, 411 F. Supp. 2d 428, 432 (S.D.N.Y. 2006) (collecting cases) ("Courts have typically required the prosecution to disclose under Rule 16 documents material to the defense that (1) it has actually reviewed, or (2) are in the possession, custody, or control of a government agency so closely aligned with the prosecution so as to be considered part of the prosecution team.").

To the extent that Defendant seeks documents in the possession or control of Eli Lilly rather than the Government, it appears that *Brady* and Rule 16 do not require the Government to disclose such documents, although Defendant has the option of seeking such material directly from Eli Lilly pursuant to a Rule 17 subpoena. *See United States v. Chalmers*, 410 F. Supp. 2d 278, 289 (S.D.N.Y. 2006) ("[A]lthough the 'material to the defense' category is arguably a broader scope of documents than exculpatory materials required by *Brady,* the Court is not persuaded that the 'government' for purposes of Rule 16 should be any broader than the 'prosecution team' standard that has been adopted in the *Brady* line of cases."); *but see United States v. Stein*, 488 F. Supp. 2d 350, 362 (S.D.N.Y. 2007) ("Given the terms of the [deferred prosecution agreement] and the government's admission that it has the unqualified right to demand production by KPMG of any documents it wishes for purposes of this case, subject to the limited privilege carve-out of paragraph 8(e)(I), the requested documents, to the extent the Court has found them material to preparing the defense, appear to be within the possession, custody or control of the government."). To the extent, however, that Eli Lilly documents have already been turned over to the Government and are encompassed by Rule 16 or *Brady*, they must be disclosed. *See United States v. Matthews*, 20 F.3d 538, 550 (2d Cir.

1994) ("Statements covered by Rule 16(a)(1)(A) include written correspondence to third persons that come into the possession of the government.").

With this general guidance, the Court must necessarily rely upon the efforts and representations of the Government in fulfilling its *Brady* and Rule 16 obligations. The Government also bears the concomitant risk if it fails to fulfill its *Brady* obligations. *See Kyles v. Whitley*, 514 U.S. 419, 438 (1995) ("[T]he prosecution's responsibility for failing to disclose known, favorable evidence rising to a material level of importance is inescapable."); *see also United States v. Agurs*, 427 U.S. 97, 108 (1976) ("[B]ecause the significance of an item of evidence can seldom be predicted accurately until the entire record is complete, the prudent prosecutor will resolve doubtful questions in favor of disclosure.").

Within this framework, the Court will consider the categories of materials sought by Defendant.

### 1. *Evidence Regarding Miami Search Warrant*

Defendant seeks evidence relating to the search warrant application submitted by Miami-based FBI Agent Alex Peraza for the storage unit in Miami where the Eli Lilly pharmaceuticals were recovered. Defendant contends that Agent Peraza knowingly proffered false testimony in the search warrant application and manipulated evidence. (Def.'s 2d Mot. to Compel [Doc. # 95] at 35–43.)

Defendant does not explain the potential relevance of this information to this case, as opposed to the Miami case, or how it might constitute *Brady* material. Presumably, such evidence could at least be used to support a motion to suppress the evidence in both the Miami case and this case. Although it is "an open question in this

circuit" whether *Brady* applies to evidence that might be used in support of a pre-trial suppression motion, *see United States v. Nelson*, 193 F. App'x 47, 50 (2d Cir. 2006), the time for making such a motion has long since passed. Additionally, the Government represents that it has made available documents related to Defendant's Miami prosecution and "will canvas" the government agencies in Miami that conducted the investigation "to determine if any additional information exists to which the defendant would be entitled." (Gov.'t's Opp'n at 6.)

### 2. *Communications Between Connecticut and Miami Prosecutors and FBI Agents*

Defendant also seeks all email and other correspondence between and among the FBI and U.S. Attorney's Offices in Connecticut and Miami regarding "criminal charges that each district would ultimately agree to file against Mr. Villa, and the factual and evidentiary basis of the latter decision." (Def.'s 2d Mot. to Compel at 6.) Defendant asserts that this evidence demonstrates that the two districts attempted "to manipulate the evidence and charges in an attempt to expose Mr. Villa to a greater prison sentence by atomizing a single conspiracy, into multiple conspiracies" and is relevant to support Defendant's Second Motion to Dismiss the Indictment in this case on grounds of double jeopardy and multiplicity. (*Id.* at 7–8.)

It is far from clear how this evidence is relevant to Defendant's guilt or punishment or otherwise relevant to his defense. Double jeopardy is a question of law that the Court has already resolved, and the Government's subjective intent in making charging decisions is not one of the factors relevant to this analysis. *See United States v. Korfant,* 771 F.2d 660, 662 (2d Cir.1985) (outlining an eight factor test). It is also not

9

clear that *Brady* mandates disclosure of evidence in support of a pretrial motion. *See Nelson*, 193 F. App'x at 50. Finally, Rule 16 exempts from disclosure "internal government documents made by an attorney for the government or other government agent in connection with investigating or prosecuting the case." Fed. R. Crim. P. 16(a)(1)(F)(2). While this protection might be overcome if the material constituted *Brady* material, *see Gupta*, 848 F. Supp. 2d at 497 ("[T]he Court finds the SEC's assertion of work product protection is overcome by Gupta's substantial need for *Brady* material, *but only* to the extent of any *Brady* material in the SEC's notes and memoranda, and not otherwise."), the Government has represented that a supervisor at the U.S. Attorney's Office in Connecticut has reviewed these communications and determined "that there is no material . . . to which the defendant is entitled" (Gov.'t's Opp'n at 5.)

Given the Defendant's failure to demonstrate his entitlement to these materials, and the Government's representation that it has reviewed such material for *Brady* purposes, the Court need not decide whether such material could be compelled under *Brady* or Rule 16. Likewise, the Court need not address Defendant's argument that the Government has waived the protections of the work product doctrine by voluntarily disclosing certain FBI memoranda discussing legal strategy.

       3.     *Eli Lilly Pricing Information*

Defendant also seeks information regarding Eli Lilly's pricing from investigations conducted in October 2005 by the United States Attorney's Offices for the Eastern District of Pennsylvania and the District of Massachusetts into Eli Lilly's rebate and pricing agreements with pharmacy benefit managers related to a number of pharmaceuticals, including some of the brands allegedly stolen from Enfield. (Def.'s 2d

Mot. to Compel at 4.) Defendant contends that the intended recipients of the stolen cargo "appear to be candidates for institutional pricing and other pricing mechanisms, including rebates, which would necessarily directly impact the final price" of those products. (*Id.* at 5.) Accordingly, Defendant contends that this information is relevant to the loss amount of the stolen goods, which will be a core issue at sentencing. (*Id.*)

In response, the Government asserts that the evidence sought by Defendant "could not constitute Brady as to guilt," because even under Defendant's theory, the value of the stolen goods would still be well above the $1000 threshold for a violation of 18 U.S.C. § 659. (Gov.'t's Opp'n at 4.) Accordingly, the Government contends that to the extent the material sought by Defendant exists, "it would only go to punishment, not guilt." (*Id.* at 5.) Although true and conceded by Defendant, this response is beside the point. Even material that "only" goes to punishment is still required to be produced under *Brady*. *See Coppa*, 267 F.3d at 135. In this case, the loss amount appears to be one of the principal contested issues.

Under § 2B1.1 of the United States Sentencing Guidelines, the provision applicable to a violation of § 659, a defendant's guidelines range is heavily influenced by the loss amount. This amount is calculated as the greater of either the "actual loss," which is "the reasonably foreseeable pecuniary harm that resulted from the offense," or the "intended loss," which is "the pecuniary harm that was intended to result from the offense." USSG § 2B1.1, comment. (n.3). At sentencing, "[t]he court need only make a reasonable estimate of the loss," and one of the factors considered is the "fair market value of the property unlawfully taken." *Id.*; *see also United States v. Arjoon*, 964 F.2d 167, 172 (2d Cir. 1992) ("'Loss' is, therefore, not the ultimate harm suffered by the victim, but

11

is rather the value of what was taken."). Accordingly, the information sought by Defendant, if it exists and shows what he contends it does, could constitute *Brady* material.

The Government contends that it is "not aware [that] there is favorable information in the District of Massachusetts and Eastern District of Pennsylvania, from investigations initiated in 2005," but states that it will nevertheless contact those offices to "determine if . . . any information exists to which the defense is entitled." (Gov.'t's Opp'n at 4.)

A sufficient effort by the Government will satisfy its obligation to search for *Brady* material, but it is important that the prosecutors do more than ask other government agencies not familiar with the intricacies of this case for "*Brady* material." Given the highly fact-specific nature of what constitutes *Brady* material, the Government must be sure to describe with particularity the categories of material sought by Defendant and potentially conduct its own review to ensure that no potential *Brady* material is overlooked. *See Gupta*, 848 F. Supp. 2d at 493 (ordering the United States Attorney's Office, rather than the SEC which possessed the material sought, to review and evaluate material for *Brady*, because "only the USAO is in a position to adequately evaluate whether anything in the SEC memoranda constitutes '*Brady*' material").

    4.  *Witness Statements that the Burglary Was an "Inside Job"*

Next, Defendant seeks any documents memorializing statements made by Amed Villa to law enforcement in which he stated that purported Government confidential informant Yosmany Nunez Aguilar recruited Defendant and his brother to participate in the Enfield heist "with the understanding that it was not going to be an actual theft, as it

12

was reportedly being executed with the consent of one [] of Eli Lilly's actual owners, and for the purposes of initiating an insurance claim." (Def.'s 2d Mot. to Compel at 43.)

As the Government points out, this defense is flawed because even if an insider was complicit in this burglary, Eli Lilly is a public corporation and presumably, this insider was not acting with the consent of the board of directors or shareholders. (Gov.'t's Opp'n at 7.) Nevertheless, this issue could be potentially relevant to Defendant's state of mind, and the Government must prove that Defendant acted willfully and with the intent to convert the goods or property to his own use. *See Modern Federal Jury Instructions*, 25-2. Additionally, evidence that someone other than Defendant was the organizer of the conspiracy or other evidence regarding Defendant's role in the conspiracy is potentially relevant to sentencing, and thus covered by *Brady*. *See* USSG § 3B1.2 (sentence reduction for a mitigating role in the offense); USSG § 3B1.1 (sentence enhancement for aggravating role).

Nevertheless, the Government states that to the extent that it "is in possession of any evidence consistent with the involvement of an 'insider' employee or owner," it has provided this material to Defendant, and if "it becomes aware of any more, it will also disclose that to the defense in accordance with its continuing obligation."[4] (Gov.'t's Opp'n at 7.) With the caveats discussed above regarding the need for *Brady* material in this case to be disclosed without delay, and the Government's obligation to be proactive about obtaining such material, the Court must necessarily rely on this representation.

---

[4] *Brady* requires that exculpatory witness statements be disclosed even if they are not memorialized in any document. *See United States v. Rodriguez*, 496 F.3d 221, 226 (2d Cir. 2007) ("The obligation to disclose information covered by the *Brady* and *Giglio* rules exists without regard to whether that information has been recorded in tangible form.").

In his Fourth Motion to Compel [Doc. # 124], Defendant seeks information related to Ely Lilly's rejected and partially rejected insurance claims for the stolen pharmaceuticals. While any rejected claims or insurance reimbursements that the victim of a larceny receives are not directly relevant to a defendant's guilt or sentencing liability, *see Arjoon,* 964 F.2d at 172, Defendant contends that such documents might be relevant to advancing his "inside job" defense and that the theft was motivated to make an insurance claim (Def.'s Sec. Mot. to Comepl at 43). Such documents could also shed light on the fair market value of the stolen goods, an important consideration at sentencing. To the extent the Government is in possession of evidence that supports such theories, it is *Brady* material that must be produced.

5. *Amed Villa's Grand Jury Testimony*

Defendant seeks Amed Villa's prior statements to law enforcement in which he reportedly stated, when he was recruited to participate in the Enfield burglary, Aguilar said it would be an "easy job," because an "insider" at the company was involved. Defendant also seeks Amed Villa's November 5, 2013 grand jury testimony and any of his prior grand jury testimony in order to support a claim that the Government knowingly and intentionally proffered false testimony to the grand jury, which is the subject of Defendant's Third Motion to Dismiss the Indictment. (Def.'s 2d Mot. to Compel at 29.) The Government contends that it has already turned over transcripts for all witnesses who have appeared before the grand jury. To the extent that other documents memorialize statements by Amed Villa or other witnesses in support of the "inside job" theory, they must be disclosed under *Brady* as discussed above.

### 6. *Evidence Regarding Defendant's Former Attorney in Miami*

Finally, Defendant seeks evidence to support his "more than . . . good-faith" suspicion that his former counsel who represented him in the Miami proceedings had "undisclosed affiliations—financial or otherwise—with law enforcement as a confidential human source of information" or was acting as a confidential informant. (Def.'s 2d Mot. to Compel at 34–35.)

Defendant has not made any showing that this information is relevant to this case. If true, this assertion could be relevant to a motion pursuant to 28 U.S.C. § 2255 to vacate the Miami conviction on the basis of ineffective assistance of counsel, but it has not been shown to be relevant or subject to disclosure here. *See United States v. Fields*, 113 F.3d 313, 324 (2d Cir. 1997) ("The government is not generally required to disclose the identity of confidential informants. Its interest in protecting the anonymity of informants who furnish information regarding violations of law is strong. . . . The defendant bears the burden of showing the need for disclosure of an informant's identity, and to do so must establish that, absent such disclosure, he will be deprived of his right to a fair trial." (internal citations omitted)). Given that Defendant has made no showing of need or relevancy, there is no basis to depart from the standard practice of keeping the names of confidential informants confidential unless they are called as trial witnesses.

## II. Conclusion

As set forth above, Defendant's Second [Doc. # 95] and Fourth [Doc. # 124] Motions to Compel are GRANTED in part and DENIED in part. Defendant's Third [Doc. # 101] Motion to Compel and "Motion for an Order" [Doc. # 115] are DENIED as moot.

IT IS SO ORDERED.

    /s/
Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 24th day of January, 2014.